```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


GEORGE ESTES,                       )
                                    )
              Plaintiff,            )
                                    )
         v.                         )      No. 4:07 CV 274 DDN
                                    )
DAE LEDERLE, et al.,[1]             )
                                    )
              Defendants.           )
```

**MEMORANDUM AND ORDER**

This matter is before the court on the motion of defendants Dae Lederle and the City of St. Ann for partial summary judgment (Doc. 49), and the motion of plaintiff George Estes to voluntarily dismiss defendant Adrian Barry (Doc. 48.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 20.) A hearing was held on October 2, 2008.

**I.  BACKGROUND**

Plaintiff George Estes brought this action against defendants Dae Lederle, Adrian Barry, Michael Brady, James Taschner, Eric Lanham, the St. Ann Police Department, and the City of St. Ann, Missouri, alleging defendants violated his civil rights under 42 U.S.C. § 1983. (Doc. 34.)

In his second amended complaint, Estes alleges that he was the subject of a police search and confinement at his home, on September 4, 2002. (Id. at ¶ 10.) During the search and confinement, Estes alleges that the police officers beat him in the head and other parts of his body, deprived him of his Miranda rights, and deprived him of access to an attorney. (Id. at ¶¶ 11-13.) After the police officers transported him to the St. Ann Police Department, Estes alleges that the officers interrogated him, beat him in the face and body, failed to advise him of his Miranda rights, and denied him access to a lawyer. (Id. at ¶ 15.)

From these allegations, Estes asserts the following claims:

---

[1]Officer Lederle's first name is Dae, and not Dave. (Doc. 50, Ex. C.) During the hearing, the court ordered that the name be changed to reflect the correct spelling. There was no objection.

1. Count I asserts a claim against the City of St. Ann for failure to properly train and supervise its police officers. Count I also asserts that the City of St. Ann tolerated the unlawful practices of the police officers, as a policy and custom.

2. Count II asserts a claim against Officer Dae Lederle for inflicting serious bodily harm during the police search and confinement, denying him timely and necessary medical care, depriving him of his Miranda rights, and denying him access to an attorney.

3. Count III asserts a claim against Officer Michael Brady for inflicting serious bodily harm during the police search and confinement, denying him timely and necessary medical care, depriving him of his Miranda rights, and denying him access to an attorney.

4. Count IV asserts a claim against Officer James Taschner for inflicting serious bodily harm during the police search and confinement, denying him timely and necessary medical care, depriving him of his Miranda rights, and denying him access to an attorney.

5. Count V asserts a claim against Officer Eric Lanham for inflicting serious bodily harm during the police search and confinement, denying him timely and necessary medical care, depriving him of his Miranda rights, and denying him access to an attorney.

6. Count VI asserts a claim against Officer Adrian Barry for inflicting serious bodily harm during the police search and confinement, denying him timely and necessary medical care, depriving him of his Miranda rights, and denying him access to an attorney.

7. Count VII asserts a claim for costs under 42 U.S.C. § 1988(b).

Each count seeks compensatory and punitive damages, attorney's fees, and costs. (Doc. 34.)

In their answers, the defendants deny the allegations against them. (Docs. 39, 40.)

## II. UNDISPUTED FACTS

Officer Adrian Barry, of the St. Ann Police Department, arrested George Estes on September 4, 2002, at 7:27 a.m. (Doc. 50, Ex. D at 2.) Estes was arrested at his home on 10116 Castle Drive, for drug possession. (Id.) According to Estes, the police did not advise him of

his Miranda rights. (Doc. 52, Ex. C at 22.) After his arrest, Estes was taken to the St. Ann Police Department. (Doc. 50, Ex. D at 2.) He was booked at 7:51 a.m., and later released from custody at 10:12 p.m. (Id.) There is no indication Estes requested medical treatment when he was in the custody of either Officer Lederle or the St. Ann Police Department. (Doc. 50, Ex. A at 2.) After being released, Estes did not immediately seek medical care and attention. (Doc. 50, Ex. B at 20.) Instead, after being released, Estes went to his girlfriend's mother's home to get clothes. (Doc. 52, Ex. C at 21.) Afterwards, he went to check on his house because the door was still open. (Id.)

The following day, Estes was admitted to the emergency room at Christian Hospital Northeast at 6:56 p.m. (Doc. 50, Ex. E at 4.) In the emergency room, Estes complained of injuries to his chest, ear, and neck. (Id. at 5; Doc. 50, Ex. F at 22.) The examining doctor found Estes was alert and in no acute distress. (Doc. 50, Ex. E at 5; Doc. 50, Ex. F at 25.) There was no evidence of a trauma to the head, there was no bruising or swelling to his face or head, range of motion in his neck was painless, he had normal range of motion in all his extremities, there was no trauma in his extremities, and there was no bruising, swelling, or abrasions to the chest. (Doc. 50, Ex. E at 5-7; Doc. 50, Ex. F at 25-27, 30-32.) The examining doctor noted a pinhole puncture in Estes's left eardrum, but found no evidence of hearing loss. (Doc. 50, Ex. E at 10; Doc. 50, Ex. F at 29.) Beyond some small abrasions at the elbow and knees, this was the only injury the doctor noted. (See Doc. 50, Ex. E at 10.) Estes was discharged from the hospital at 7:25 p.m. (Doc. 50, Ex. E at 8.) He did not really receive any type of treatment at the hospital. (Doc. 50, Ex. B at 22.)

Estes is not aware of any other instances in which the City of St. Ann denied a detainee, inmate, or prisoner medical treatment. (Doc. 50, Ex. A at 3.) He is also not aware of any other instances in which the City of St. Ann subjected a detainee or arrestee to excessive force. (Id.) He does not have any evidence that the City of St. Ann has a policy of using excessive force, or of denying medical care. (Doc. 50, Ex. B at 27.) He does not have any evidence of any other instances in which a member of the St. Ann Police Department or a member of the jail denied an inmate or detainee necessary medical care. (Id.)

Officer Lederle completed basic law enforcement training at the Eastern Missouri Police Academy on May 25, 2000. (Doc. 50, Ex. C at 2.) In addition to his basic training, Officer Lederle has also received numerous hours of training while in the service of the St. Ann Police Department. (Id. at 3-4.) According to Officer Lederle, Estes's allegations did not lead to any internal investigation. (Doc. 52, Ex. D at 30.)

On February 7, 2008, Dr. Robert P. Poetz, D.O., examined George Estes. (Doc. 52, Ex. B at 10.) Dr. Poetz diagnosed Estes with unilateral gynecomastia, or enlargement of the left breast, as a result of a trauma that apparently occurred on September 5, 2002. (Id. at 12.) Unilateral gynecomastia is a permanent condition. (Id. at 13.) Traumatized tissue is more likely to develop malignancies. (Id.) Finally, Dr. Poetz testified that ecchymosis, bruising, and swelling can take several days to manifest, depending on how deeply the tissue was damaged. (Id. at 14.)

### III.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material," if it could affect the ultimate disposition of the case, and a factual dispute is "genuine," if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004).

## IV. DISCUSSION

In the motion for partial summary judgment, the defendants argue there are no genuine issues of material fact as to certain issues. In particular, the defendants argue there is insufficient proof that the City of St. Ann violated Estes's civil rights under § 1983. The defendants also argue that there is insufficient proof that Officer Lederle violated Estes's civil rights under § 1983 by denying him necessary medical care, depriving him of his Miranda rights, or denying him access to an attorney. (Doc. 50.)

In response, Estes argues that the record provides sufficient proof to support finding § 1983 liability on the part of the City of St. Ann. Estes also argues that his claims that Officer Lederle denied him necessary medical care and deprived him of his Miranda rights give rise to a § 1983 claim. He concedes that his claim against Officer Lederle for denying him access to an attorney fails to state a claim under § 1983. (Doc. 51.)

### A. City of St. Ann

Section 1983 provides a civil action against any individual, who under color of state law, causes a deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Hannon v. Sanner, 441 F.3d 635, 636 (8th Cir. 2006). A municipality can be found liable under § 1983, only where the municipality itself causes the constitutional violation at issue. City of Canton, Ohio v. Harris, 489 U.S. 378, 386 (1989). A city cannot be held liable under § 1983 based on a respondeat superior theory. Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 691-92 (1978). In a case alleging municipal liability under § 1983, the question to answer is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Harris, 489 U.S. at 386.

**Failure to Train**

Estes argues the City's failure to properly train and supervise its police force supports a finding of § 1983 liability.

There are certain circumstances, though limited, in which an allegation of a failure to train can form the basis for liability under § 1983. Id. at 387. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. To establish "deliberate indifference," the plaintiff must offer evidence that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996). A plaintiff may show a city had notice in one of two ways: 1) by showing that the failure to train city employees was so likely to result in a violation of constitutional rights that the need for training was patently obvious; and 2) by showing a pattern of misconduct that indicated that the city's responses to a regularly recurring situation were simply insufficient to protect the citizens' constitutional rights. See S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1029 (8th Cir. 2002).

When resolving issues of municipal liability, the focus must be on the adequacy of the training program as it relates to the tasks the particular officers must perform. Harris, 489 U.S. at 390. In addition, a city should not be held liable just because a particular officer may not have been adequately trained; an officer's personal shortcomings may be the result of factors unrelated to inadequate training. Id. at 390-91. The "deliberate indifference" standard is necessarily a stringent one. Id. at 392. A less stringent standard would create fault based on a respondeat superior theory, and engage the federal courts in an endless exercise of second-guessing a city's employee-training programs. Id.

The only evidence currently before the court concerns Officer Lederle's individual training. According to that evidence, Officer Lederle successfully completed the Eastern Missouri Police Academy, and also received several hours of on-the-job training. Standing alone, Officer Lederle's training is not constitutionally deficient. See Andrews, 98 F.3d at 1076-77 (finding two weeks of on-the-job training and police academy training within the first year of employment was not constitutionally deficient); see also Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir. 1989) ("[W]e are not prepared to hold that the

Constitution requires that a prison guard possess a high school diploma or that he attend a certain two-week training course.").

More importantly, Estes has not presented any evidence about St. Ann's police training and supervision. He has also not presented any evidence about the relationship between the officers' conduct and the alleged inadequacies of their training and supervision. "Without such facts to demonstrate that there is a genuine issue for trial, the [plaintiff's] mere allegations that [the City of St. Ann] failed to train or supervise its police officers cannot defeat summary judgment." Robinette v. Jones, 476 F.3d 585, 591 (8th Cir. 2007).

Summary judgment is appropriate on this claim.

**Unlawful Police Practices**

Estes argues the City of St. Ann tolerated the unlawful practices of its police officers, as a policy and custom.

A plaintiff may establish municipal liability under § 1983, by proving that his constitutional rights were violated by an action adhering to an official municipal policy. Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998). An official policy involves a deliberate choice to follow a certain course of action, when faced with several alternatives. Id. To constitute an official policy, the choice or action must be made by an official with the final authority to establish governmental policy. Id.

A plaintiff may also establish municipal liability by proving that his constitutional rights were violated by misconduct so pervasive among city employees, that the misconduct constituted a custom or usage with the force of law. Id. To prove a custom, a plaintiff must show: 1) the existence of a continuing, widespread, and persistent pattern of unconstitutional misconduct by a city's employees; 2) deliberate indifference to, or tacit authorization of, this misconduct by the city's policymaking officials; and 3) that the custom caused the constitutional injury in question. Id.

In this case, Estes has not offered any proof of either an official policy or custom designed to deprive him of his constitutional rights. In his deposition, he admitted that he did not have any evidence that the City of St. Ann had a policy of using excessive force or of denying

medical care.  Estes also admitted that he lacked any evidence of other instances in which the City of St. Ann or members of the St. Ann Police Department denied a detainee necessary medical care.  Finally, Estes testified that he was not aware of any other instances in which the City of St. Ann subjected a detainee or arrestee to excessive force.  See McGautha v. Jackson County, Mo., Collections Dep't, 36 F.3d 53, 57 (8th Cir. 1994) ("Liability for an unconstitutional custom or usage . . . cannot arise from a single act.").  Estes has failed to offer legally sufficient proof that the City of St. Ann tolerated the unlawful practices of its police officers, either as a policy or custom.

Summary judgment is appropriate on this claim.

**Failure to Conduct an Internal Investigation**

Estes argues that summary judgment is inappropriate because the City of St. Ann exhibited deliberate indifference to the officers' excessive force by failing to conduct an internal investigation into his allegations.

This argument is insufficient to create a material issue of fact. Any internal investigation would have occurred after the alleged conduct. As a result, there would be no direct causal link between an internal investigation – or the absence of one – and the alleged constitutional injury in question.  See Webb v. City of Joliet, No. 03 C 4436, 2005 WL 1126555, at *4 (N.D. Ill. May 4, 2005) ("[The] alleged failure to conduct internal investigations cannot be the basis for a section 1983 claim."); see also Jordan v. Davis, No. 5:07 CV 113 JMM/JTR, 2007 WL 1959037, at *3 (E.D. Ark. July 3, 2007) (dismissing § 1983 action because the court was "not aware of any cases holding that an inmate has a federal constitutional or statutory right to have an internal prison investigation conducted.").

### B.  Officer Lederle

Officer Lederle argues there is insufficient proof that he violated Estes's constitutional rights by denying him necessary medical care, depriving him of his Miranda rights, or denying him access to an attorney.

**Denying Medical Care**

Estes argues that the testimony of Dr. Poetz suggests he had a serious medical need, which creates a genuine issue of material fact on the question of whether Officer Lederle denied him necessary medical care.

An inmate must rely on prison authorities to treat his medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976). After all, if the authorities fail to provide for a prisoner's medical needs, those needs will go unmet. <u>Id.</u> The government must, therefore, provide medical care to those being punished by incarceration. <u>Id.</u> If the authorities exhibit deliberate indifference to a prisoner's serious illness or injury, the prisoner will have a cause of action under § 1983. <u>Id.</u> at 104. This is true, whether the indifference stems from prison doctors responding to a prisoner's medical needs, or by prison guards intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed. <u>Id.</u>

An inmate's claims of inadequate medical care fall under the Eighth Amendment. <u>Hartsfield v. Colburn</u>, 371 F.3d 454, 456-57 (8th Cir. 2004). A pretrial detainee's claims of inadequate medical care fall under the Due Process Clause of the Fourteenth Amendment. <u>Id.</u> Nonetheless, the Eighth Circuit has applied the deliberate indifference standard to claims arising under either amendment. See <u>id.</u>; see also <u>Davis v. Hall</u>, 992 F.2d 151, 152-53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care). "Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as [inmate's receive] under the Eighth Amendment." <u>Hartsfield</u>, 371 F.3d at 457. To succeed on a deliberate indifference claim (under either amendment), the plaintiff must prove that he suffered from an objectively serious medical need, and that the officials knew of that need, yet deliberately disregarded it. <u>Id.</u> A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the need for medical attention. <u>Coleman v. Rahija</u>, 114 F.3d 778, 784 (8th Cir. 1997).

In this case, Estes has not produced legally sufficient evidence that he suffered from an objectively serious medical need at the time of

the arrest.  There is no indication Estes requested medical treatment while he was in police custody.  After being released, Estes did not immediately seek medical care and attention.  Instead, Estes waited until the next evening, before going to the hospital.  Once at the hospital, the examining doctor found Estes was alert and in no acute distress.  There was no evidence of a trauma to the head or the extremities, and no evidence of bruising or swelling to his face, head, and chest.  Estes had normal range of motion in his extremities.  The examining doctor only noted some small abrasions and a pinhole puncture in Estes's left eardrum, unaccompanied by any hearing loss.  Estes was discharged from the hospital less than forty minutes after being admitted.  And by his own admission, he did not "really receive any type of treatment" while at the hospital.  (Doc. 50, Ex. B at 22.)  Looking to the undisputed facts of the case, Estes has failed to proffer legally sufficient proof that he suffered from an objectively serious medical need at the time of the arrest.  See James v. Coughlin, 13 F. Supp. 2d 403, 410 (W.D.N.Y. 1998) (granting defendants' motion for summary judgment on plaintiff's deliberate indifference claim, where prison nurse examined plaintiff after the incident and found no cuts or injuries, and plaintiff denied being injured).

Estes has also failed to proffer legally sufficient proof that Officer Lederle was aware of his need for medical care.  In an interrogatory, the defendants asked Estes to state "the time at which Plaintiff made any request for medical treatment."  (Doc. 50, Ex. A at 2.)  Estes did not respond to this question.  His allegations therefore "lack any specific description of when he requested medical treatment" and whether Officer Lederle deliberately denied him access to that treatment.  See James, 13 F. Supp. 2d at 410.

Summary judgment is appropriate on this claim.

**Deprivation of Miranda Rights**

Estes argues that a violation of his Miranda rights can support a section 1983 claim.  He notes that the Supreme Court's opinion in Dickerson v. United States, 530 U.S. 428 (2000) announced that Miranda was a constitutional rule.

As noted above, section 1983 provides a civil action against any individual, who under color of state law, causes a deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Hannon, 441 F.3d at 636. That said, § 1983 does not provide a cause of action for a violation of a plaintiff's Miranda rights. Id. "[A] litigant cannot maintain an action under § 1983 based on a violation of the Miranda safeguards." Id.; see also Noah v. Saint Louis County, No. 4:06 CV 591 CDP, 2007 WL 1726538, at *1 (E.D. Mo. June 14, 2007) ("The Eighth Circuit has repeatedly held that a section 1983 action is not a remedy for an alleged Miranda violation."). The Supreme Court's holding in Dickerson does not change this analysis. See Hannon, 441 F.3d at 637. The decision in Dickerson does not undermine the rule that "the Miranda procedural safeguards are not themselves rights protected by the Constitution . . . ." Id.

Summary judgment is appropriate on this claim.

**Denying Access to an Attorney**

The Sixth Amendment right to counsel does not attach until the initiation of adversary judicial criminal proceedings - either by way of formal charge, preliminary hearing, indictment, information, or arraignment. United States v. Morriss, 531 F.3d 591, 593 (8th Cir. 2008).

In this case, Estes was arrested on September 4, 2002. He was indicted on March 23, 2003, and later arraigned on April 29, 2003. (Doc. 50, Ex. G at 1-2.) Looking to Morriss, the right to counsel had not attached at the time of Estes's arrest. Estes concedes this point.

Summary judgment is appropriate on this claim.

## V. VOLUNTARY DISMISSAL

Estes moves to voluntarily dismiss defendant Adrian Barry without prejudice. (Doc. 48.) The motion is granted.

## VI. REMAINING CLAIMS FOR TRIAL

Based on the court's rulings, the following claims remain for trial:
1.  The claim in Count II against Officer Dae Lederle for inflicting serious bodily harm during the police search and confinement.

2. All of the claims in Count III against Officer Michael Brady.
3. All of the claims in Count IV against Officer James Taschner.
4. All of the claims in Count V against Officer Eric Lanham.
5. The claim for costs in Count VII.

### VII. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED THAT** the motion of defendants for partial summary judgment (Doc. 49) is sustained. All of the claims against the City of St. Ann are dismissed with prejudice. With the exception of the excessive force claim, all of the claims against Officer Lederle are dismissed with prejudice.

**IT IS FURTHER ORDERED THAT** the motion of plaintiff to voluntarily dismiss defendant Adrian Barry without prejudice (Doc. 48) is granted.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 15, 2008.